*The opinion of the Court was delivered by [*269
BjchardsoN, J.
This is but the second instance in which such a case as the present has been laid before the Constitutional Court. Upon its general character and tendency, and the feelings it is calculated to excite, there can be but one opinion and one wish, i. e., the anticipation that the case can seldom arise, and the hope that it will not be brought without both merits and a prudential consideration of the exposure incident to such actions.
*534 Though it is not absolusely necessary to discuss the ground of excessive damages, yet I will notice the rule which should govern. And in so novel a case, I will not refrain from the reflections arising from the subject, before examining the points of strict law.
I know of no instances in which Courts have granted new trials on account of excessive damages given in suits brought for criminal conversation. See Duberly v. Gunning, 4 Term, 659. And that practice has great intrinsic reason. Examples of chastity have the happiest effects ; because man is at least emulous of virtue ; while instances of incontinence produce the worst, because the pasión that leads to it is universal. And however true it is, that there is no enjoyment so great as that which is innocent and restricted, yet, under the incentive of example, this passion scarcely acknowledges any bounds.
The practice of judges in disallowing new trials upon the ground of the mere excess of damages, wherein the appeal is entirely addressed to discretion, is doubtless founded much too upon the consideration that the order and happiness of society depend greatly on the continence of both sexes. Strictly speaking, too, by the seduction of a wife, the positive loss to her husband is very great. Under the rules of law, he cannot, while the first is alive, take a second wife; his loss is therefore greater than if she were destroyed altogether. The wound inflicted on his peace of mind is deep and lasting. “ The spirit of a man may sustain his infirmity, (his bodily ills and misfortunes,) *“but a wounded spirit, J who can bear ?” And though the “wounded spirit” means conscious guilt, yet dishonor is nearly allied to it. The great writer, who, for his keen inspection, “ deep through the human heart,” deserves the distinguished encomium of “ nature’s boast,” is most just, when he says, “he, who filches from me my good name, &c., makes me poor indeed.” For, with good name, man has lost the great mean of .success and usefulness in life. The former the object of the selfish, the latter the noble aim of the generous. But how much poorer does he make me, who, with the disrepute which provokes unfeeling scorn, instils that inward sense of dishonor, which, like the “wounded spirit,” none can bear. Would the seducer ask himself what damages would requite him, were he the injured husband, he would probably conclude, that as the brutal ravisher of aloman should be prepared to meet death, so' the deliberate seducer of his neighbor’s wife cannot look for less than pecuniary ruin, and he would then, too, admit that society should be as ready to recompense the injured husband, and to punish his wrongdoer, as the immediate sufferer himself. Would he, when practicing arts of seduction, but ask himself what would be his feelings, were his wife or his daughter defiled ? even the gallant, gay “Lothario, warm with the Tuscan grape, and high in blood,” might pause, reflect, and say to himself, I will not for this end, and to her ruin, seek the weak Calista, to break the peace even of Horatio, though I love him not. I will not be the villian spider of society, to watch where weakness strays, and to weave meshes on the way, that innocence may be entrapped. I will not be the reptile, that, unpitying, sees the agony which follows from his poison or his snares. But the character of the charge against the defendant, the practice of other courts, and the evils which might result from a different course, all concur, and would alike forbid, our gz’anting a new trial on the ground of excessive damages.
*535 *Yet the motion must prevail upon both the other grounds, r^otri
The rule is well established, that though the wife’s aberration, <- after her seduction by the defendant, or after the elopement with him, cannot be given in evidence; yet, it is also clear, that her conduct, until actual seduction, by the defendant, may be proven. Peake, 331. Phil. 139. Now in this case there was an interval of time, which, though very suspicious, was equivocal; i. e., from the day of leaving her husband in July, to her certain cohabitation with the defendant, in August following. It is true she had eloped, but with whom does not appear with certainty. The defendant had exposed'his designs, and had kissed her. And though 1 do suspect, that it did not, in this instance, require the deceitful kiss to consummate their treachery, but that the husband had been before betrayed, still, further inquiry was necessary, and the defendant had a right to the evidence of her misconduct with others, while that with himself was suspected only. Boynton v. Kellog, 3 Mass. 189. Phil. 64. Peake, 331. And if finally it should have turned out, that his own criminal intercourse with her, had, in fact, preceded such misconduct with other men, the evidence could, and would have weighed nothing.
The second ground is equally clear. The object was to prove the wife’s meretricious conduct before seduction by the defendant. And provided the witness did not himself object to divulging his own immorality, it was not competent for any other person to do so. It would evidently be the best possible testimony, however degrading to him who would voluntarily publish the fact. For he who answers against his own interest, is, on that account, the more credible. Peake, 160. And however indecent, too, the exposure might be, yet the laws make no distinction of that nature. Swift, *1*1, 80, 81. And though we may not protect a seducer of women with ail the feelings of men whose dearest rights are at stake, yet the meanest claim the equal distribution of rights. Here no partial *spirit like assuming primogeniture interferes to place one brother above another; but the eldest and the youngest, the L " greatest and the weakest child of the republic, take in equal partition, the common heritage of the laws.
Colcook, Nott, Johnson and Huger, JJ., concurred.
1 N. & McC. 256.