17903

Hardy P. FENNELL, Jr., Plaintiff-Respondent, v. R. J. . LITTLEJOHN, Defendant-Appellant

(125 S. E. (2d) 408)

190

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. Bolt & Bowen,* of Greenville, *for Respondent,*

April 25, 1962.

Lewis, Justice.

This is an action by the plaintiff to recover damages which allegedly resulted from criminal conversation by the defendant with plaintiff's wife. The alleged adulterous acts of the defendant with plaintiff's wife, which form the basis of this action, occurred after the separation of plaintiff and his wife because of similar conduct of the wife with two other men, and after divorce proceedings had been instituted against the wife by the plaintiff on the ground of her previous adulterous acts. The defendant chiefly contends by way of defense that, since the plaintiff and his wife had separated before the criminal conversation with the defendant took place, the marital rights had ceased to exist and such prior separation operated as a bar to this action.

A trial of the cause resulted in a verdict for the plaintiff for $2,000.00 actual damages and $16,000.00 punitive damages. After the verdict the defendant moved for judgment in his favor notwithstanding the verdict upon the grounds (1)

that the prior separation of plaintiff and his wife operated as **a bar to this action** and (2) the evidence was insufficient to sustain a verdict for punitive damages. An alternative motion for a new trial was made upon the grounds (1) that the verdict was the result of passion and prejudice on the part of the jury and (2) that the trial judge erred in refusing to allow the defendant on cross examination of the plaintiff to show that, although plaintiff had filed suit against the defendant, no suit had been filed against the other paramours of the wife, whose adulterous conduct actually caused the disruption of plaintiff's marriage. The trial judge concluded that the verdict for punitive damages was excessive and ordered a new trial unless plaintiff remitted upon the record one half of such amount, but otherwise denied all of the motions of the defendant. The plaintiff duly remitted the amount of the verdict found by the trial judge to be excessive, leaving judgment to be entered against the defendant in the amount of $2,000.00 actual damages and $8,000.00 punitive damages. From this judgment the defendant has appealed.

The facts out of which this controversy arose are not in dispute. The plaintiff and his wife were married in 1948 and resided in a home owned by the plaintiff in Greenville, South Carolina. They have one child, a daughter. In 1954 the plaintiff and his wife separated for several months due to improper relations of the wife with one Rivers. They were subsequently reconciled and lived together until the latter part of October, 1959, when the wife was caught in an adulterous affair with one Erickson. Following this, the plaintiff left the home and instituted divorce proceedings against his wife, charging her with adultery with Rivers in 1954 and Erickson in October, 1959. After the separation and institution of divorce proceedings, the wife continued to occupy the home, with the plaintiff contributing to its maintenance. In November, 1959, about one month after the last separation of plaintiff and his wife, the wife was employed by the defendant to do office work, being recommended by

the plaintiff who was also employed part time by the defendant to do the accounting work for his various business enterprises.

A hearing was held in the divorce proceedings on January 5, 1960, at which the defendant appeared as a witness on behalf of the wife. The plaintiff testified at the time that he did not think there was any possibility of a reconciliation with his wife. Subsequently, on February 8, 1960, in accordance with the statute (Section 20-110, 1952 Code of Laws of South Carolina), the Master, to whom the divorce proceeding was referred for hearing, held a conference with the plaintiff and the wife in an effort to effect a reconciliation, but was unable to reconcile their differences.

On March 25, 1960, the defendant was caught in the act of adultery with plaintiff's wife in the home provided for her by the plaintiff. This action was instituted on April 4, 1960. After the adulterous affair between the wife and the defendant, the divorce proceeding was reopened on April 16, 1960, and the defendant was named as one of those with whom the wife had committed adultery. The final divorce decree was issued on April 29, 1960, finding the wife guilty of adultery with Rivers, Erickson and the defendant.

The first question for determination in this appeal is whether or not a husband may maintain an action for criminal conversation, when the act of adultery complained of occurred subsequent to the separation of. the husband and wife and after the institution by the husband of a divorce action, but before the final divorce decree. From the foregoing facts it is seen that the act of adultery actually proven between the defendant and plaintiff's wife occurred on March 25, 1960, five months after the separation of the plaintiff and his wife and the institution of divorce proceedings, about three months after a hearing in the divorce proceeding, and about forty-five days after an unavailing reconciliation conference, but approximately one month before the final divorce decree was granted legally dissolving the marriage between plaintiff and his wife.

In deciding the foregoing question, it is necessary to determine the nature of the cause of action for criminal conversation. While the common law action for criminal conversation has long been recognized in this State, it appears that only two such cases have heretofore been presented on appeal, *Haney v. Townsend,* 1 McCord 206; *Torre v. Summers,* 2 Nott & McC. 267. The first concerned the form of the action in such cases and in the second questions arose as to the excessiveness of the damages allowed and the admissibility of evidence. Neither determines the question now before the Court.

The action for criminal conversation is generally not looked upon with favor and as stated in the foregoing case of *Torre v. Summers:* "Upon its general character and tendency, and the feeling it is calculated to excite, there can be but one opinion and one wish; *i. e.,* the anticipation that the case can seldom arise, and the hope that it will not be brought without both merits and a prudential consideration of the exposure incident to such actions."

Criminal conversation means adulterous relations between the defendant and the spouse of the plaintiff. *Rheudasil v. Clower,* 197 Tenn. 27, 270 S. W. (2d) 345, 46 A. L. R. (2d) 1083. And to sustain the action it was necessary for the plaintiff to establish two things, namely: (1) The marriage between the spouses, and (2) sexual intercourse between the defendant and the wife during coverture. 42 C. J. S. Husband and Wife § 698 b. p. 353; 27 Am. Jur. 136, Section 536.

Alienation or loss of affections is not a necessary element of the action. *Oliver v. Oliver,* 159 Neb. 218, 66 N. W. (2d) 420; *Lankford v. Tombari,* 35 Wash. (2d) 412, 213 P. (2d) 627, 19 A. L. R. (2d) 462; *Hargraves v. Ballou,* 47 R. I. 186, 131 A. 643.

There is a distinction between an action for alienation of affections and one for criminal conversation. While both are based on the injury to the right to consortium, they are

generally regarded as essentially different. A cause of action for either may exist without the other. The principle is thus stated in 27 Am. Jur. 136, Section 536:

"The causes of action for criminal conversation and for alienation of affections are alike in that each arises from the marriage relation and is for a tort against the right to consortium, but they differ in that the latter is for loss of consortium or affection and does not necessarily, although it may, involve such a loss through adulterous intercourse, whereas the former is for the adulterous intercourse or criminal conversation, the alienation of affections and other consequent injuries to the consortium, such as loss of service, being only matters of aggravation and not necessary to the cause of action."

The basis of the cause of action for criminal conversation is the invasion of the marital relationship. While marriage is in one sense a private contract between the parties, it is also a relationship in which the state is vitally interested and, of such interest, the law attaches thereto certain rights and duties, irrespective of the wishes of the parties. Marriage is in its nature a permanent status and has been properly referred to as the most important of all civil relations. The relationship, once entered into, cannot be dissolved by consent of the parties. It continues until death or dissolution by proper judicial decree. As stated in the case of *Brown v. Brown,* 215 S. C. 502, 56 S. E. (2d) 330, 333, 15 A. L. R. (2d) 163:

"It is generally recognized that the public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation. This policy finds expression in probably every state in this country in legislative enactments designed to prevent the sundering of the marriage ties for slight and trivial causes, or in any case except on a full and·satisfactory proof of such facts as the legislature has declared to be cause for divorce. Such provisions find their justification only in this well-recognized interest

of the state in the permanency of the marriage relation. 17 Am. Jur., Sec. 12, page 154. As said in *Maynard v. Hill,* 125 U. S. 190, 8 S. Ct. 723, 729, 31 L. Ed. 654: 'Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress.' "

While the conduct of the parties may render the marriage relationship a hollow shell, the relation, once entered into, continues until death or dissolution in the manner prescribed by law. Even though the parties may be separated, as long as the contract is in existence, the state, for the good of society and the family, clings to the possibility of a return of the relationship to its proper state. This is evidenced by the mandatory reconciliation procedures of our divorce statute. Section 20-110, 1952 Code of Laws. The fact here that the husband had on a prior occasion forgiven the wife and resumed living with her after adulterous conduct on her part, lends support to the possibility of a further reconciliation after the affair with Erickson, but for the intervention of the defendant. The fact that a divorce proceeding had been instituted and the mandatory reconciliation conference held without avail did not render impossible a reconciliation thereafter and before a final decree. As long as such possibility exists, the law is dedicated to its accomplishment and protects the marriage relationship against those who might wrongfully intrude, even though, as here, the possibility of reconciliation was extremely remote. The fact that the marriage between plaintiff and his wife may have been dealt a mortal blow by her adulterous conduct with others did not license the defendant to join in its destruction. Under the law, the marital rights remained until the marriage was ended by the subsequent divorce decree.

It follows, therefore, that the act of criminal conversation here charged was an invasion of the marital rights of the plaintiff. While the authorities are not in agreement, we think the better rule is that proof of the prior separation of the parties and lack of affection between them are matters in mitigation of damage, but are not fatal to the cause of action. Neither does the fact that the plaintiff obtained a decree of divorce from his wife subsequent to the alleged adulterous act constitute a bar to the action. See 27 Am. Jur., Husband and Wife, Sections 538 and 577; 42 C. J. S., Husband and Wife, § 698 c(4), p. 355; Annotation: 20 A. L. R. 943; Restatement of the Law, Torts, Vol. 3, Sections 685 and 689.

The defendant next contends that the lower Court erred in refusing to set aside the verdict rendered in this cause upon the grounds that (1) there was no evidence to sustain an award for punitive damages, and (2) the verdict was so excessive as to indicate passion and prejudice on the part of the jury. These questions will be discussed together.

Of course, in actions for criminal conversation, in proper cases, both actual and punitive damages may be recovered.

To sustain the action it is not necessary to show pecuniary damage. The violation of plaintiff's marital rights is sufficient to give a cause of action and to justify an allowance of compensatory damages, and whether they are more than nominal rests within the discretion of the jury, under the facts of each particular case. If sustained by the evidence, the jury may, in assessing actual or compensatory damages, take into consideration such elements as humiliation, embarrassment and mental anguish to the plaintiff, as well as loss or impairment of the right to consortium. 42 C. J. S., Husband and Wife, §§ 698 (b) and 706(a); 27 Am. Jur. 143, Section 544; *Hargraves v. Ballou,* 47 R. I. 186, 131 A. 643.

Punitive damages are recoverable when the evidence shows a willful, wanton, or malicious invasion of the rights of the plaintiff. And "the test by which a tort is to be characterized as reckless, willful or wanton is whether it has been committed in such a manner or under such circumstances that a person of ordinary reason or prudence would then have been conscious of it as an invasion of the plaintiff's rights." *Rogers v. Florence Printing Co.,* 233 S. C. 567, 106 S. E. (2d) 258, 263.

The testimony shows that the plaintiff was employed by the defendant for several years. In 1959, after the separation, the wife was employed by the defendant upon the recommendation of the plaintiff. Even though the plaintiff separated from his wife, he was furnishing her with a home in which to live. The defendant was aware of these circumstances. He appeared as a witness for the wife in the divorce proceedings and was familiar with the circumstances surrounding the marital difficulties of the plaintiff, and his wife. The defendant was no stranger in town. The evidence sustains the conclusion that the defendant was guilty of a conscious invasion of the marital rights of the plaintiff, which is sufficient to sustain an award of punitive damages.

The defendant contends that the verdict in this case was so excessive as to indicate passion and prejudice on the part of the jury. Since the plaintiff and his wife were separated at the time of the adulterous acts of the defendant, the only elements of actual damage, for which recovery was sought, were the alleged humiliation, embarrassment and mental anguish to the plaintiff resulting from the invasion of the marital relationship by the defendant. For these elements of damage the jury awarded the sum of $2,000.00. The award for punitive damages was $16,000.00, which was subsequently reduced by the trial judge to the sum of $8,000.00 upon the ground that the verdict for punitive damages was too liberal.

The rule is well settled in this State that, if the verdict of the jury is merely excessive, only the trial judge has discretionary power to reduce it. If the verdict appears so excessive as to indicate that it was the result of caprice, passion or prejudice, both the trial judge and this Court are under a duty to set it aside. *Rogers v. Florence Printing Co., supra,* 233 S. C. 567, 106 S. E. (2d) 258.

However, it has been repeatedly stated that we have little, if anything, to do with the amounts of verdicts. The amount to be rendered, as actual or punitive damages, is left within the sound discretion of the jury and the trial judge. Further, it is well settled that the granting of a new trial on the ground that the verdict is so excessive as to indicate caprice, passion or prejudice on the part of the jury is in the discretion of the trial judge and his decision thereon will not be disturbed unless abuse of discretion is shown. *Charles v. Texas Co. et al.,* 199 S. C. 156, 18 S. E. (2d) 719; *Payne v. Cohen et al.,* 168 S. C. 459, 167 S. E. 665; *Weeks v. Carolina Power & Light Co.,* 156 S. C. 158, 153 S. E. 119.

After carefully reviewing the record in this case, we agree with the trial judge that, while the verdict was large, it was "founded upon the facts and not upon passion and prejudice". The damages in this case, both actual and punitive, are incapable of accurate measurement. There is no legal yardstick by which to determine them and courts are generally reluctant to disturb an assessment of damages by the jury under such circumstances.

While the award for actual damages was confined to compensation for the injured feelings of the plaintiff, as to which there was testimony by way of mitigation, we cannot say that the verdict of $2,000.00 indicated caprice, passion or prejudice on the part of the jury. There is no market value for injured feelings; and the value of money in comparison with the value of the state of mind of which a man may be deprived by the wrongful invasion

of his rights is a matter as to which reasonable men may, and do, differ widely. *Currie v. Davis,* 130 S. C. 408, 126 S. E. 119. Caprice, passion or prejudice is not indicated in the award of actual damages.

Neither does the award for punitive damages indicate caprice, passion or prejudice on the part of the jury. In the assessment of punitive damages, there is no exact monetary standard which can be used. The main things which are to be considered in their assessment are the character of the tort committed, the punishment which should be meted out therefor, and the ability of the wrongdoer to pay. *Johnson v. Atlantic Coast Line Railroad Co. et al.,* 142 S. C. 125, 140 S. E. 443, 447. In the *Johnson case,* the court discussed the general nature and purpose of an award for punitive damages and, in doing so, stated:

"Exemplary damages have relation to the injured party in only one respect, to vindicate his right, recklessly, willfully, maliciously, or wantonly invaded. They relate more to the situation of the wrongdoers, the defendants, usually. One of the chief purposes in awarding damages of this class is to punish the wrongdoer, not only to prevent by him a recurrence of the wrongful act, but to deter others from conduct of the same or similar kind. They are not intended for the sole good of the injured party. And not for the improvement of the disposition and character alone of the willful tort-feasor is it that our law has looked with favor upon the assessment of punitive damages under certain circumstances. But the object is to protect every man, woman, and child from those who consciously disregard the rights of their fellows. It follows that the state, as the guardian and protector of the rights of her citizens, is therefore interested in the assessment of punitive damages, and that all the people may look to the law of their land to defend them from wrongful invasions of both their personal and property rights."

While there was no direct evidence of the financial worth of the defendant, the testimony supports the inference that he was a man of subsantial business interests. Taking all of

the facts and circumstances into consideration, including the character of the tort committed and the basic interests of the individual and society which the award of punitive damages is designed to protect in this case, we think the imposition of substantial punitive damages was warranted.

We conclude that there was no abuse of discretion by the trial judge in refusing to grant a new trial on the ground that the verdict was so excessive as to indicate passion or prejudice on the part of the jury.

Finally, the defendant charges error in the refusal of the trial judge to permit the defendant to show on cross examination of the plaintiff the fact that plaintiff had not filed suit for damages against another paramour of his wife. As hereinabove stated, the wife of the plaintiff had been guilty of adulterous conduct with one Erickson prior to her affair with the defendant. When the plaintiff was testifying, counsel for the defendant asked him on cross examination if he had brought a similar action against Erickson. The trial judge sustained plaintiff's objection to the question, which the defendant says was error. The defendant contends that he should have been allowed to show that the plaintiff had not instituted an action against the said Erickson because such testimony was relevant to show (1) the extent of the damages suffered by the plaintiff from the acts of the defendant and (2) that this action was brought only to extort damages from the defendant since he might be able to respond to a judgment.

We have held that the extent to which cross examination of a witness may go is a matter resting within the discretion of the trial judge and the exercise of that discretion is not subject to review except in cases of manifest abuse or injustice. The defendant was allowed to show the prior adulterous conduct of the wife in mitigation of damages. Recovery was not sought in this action for the damages inflicted by Erickson, but only those inflicted by the defendant. The jury was so instructed. The liabilities of Erickson and the defendant were separate and distinct. Erickson

was not a party to this action and whether or not the plaintiff had instituted an action to recover for his damages inflicted by Erickson would shed no light on the liability of the defendant. See: *Garrett v. Mutual Benefit Life Ins. Co. of N. J.*, S. C., 124 S. E. (2d) 36; *Jackson v. Banks Construction Co.*, 229 S. C. 461, 93 S. E. (2d) 604.

We find no abuse of discretion on the part of the trial court, under the facts here, in refusing to permit cross examination of the plaintiff as to whether he had instituted an action against other paramours of the wife.

Affirmed.

TAYLOR, C. J., MOSS and BUSSEY, JJ., and LEGGE, Acting J., concur.