**In the Matter of William CARRACINO, Debtor.**

**STATE OF NEW JERSEY DEPART-MENT OF ENVIRONMENTAL PROTECTION, Plaintiff,**

**v.**

**William CARRACINO, Defendant.**

**Bankruptcy No. 82–1351.**

United States Bankruptcy Court, D. New Jersey.

Jan. 25, 1985.

James E. Masterson, Kleinberg, Moroney, Masterson & Schacter, Millburn N.J., for debtor.

Howard Epstein, Trenton, N.J., appearing for Irwin Kimmelman, Atty. Gen., N.J., for N.J. Dept. of Environmental Protection.

## OPINION

D. JOSEPH DE VITO, Bankruptcy Judge.

On August 4, 1982, William Carracino filed a petition in bankruptcy under Chapter 7 of Title 11 of the U.S. Code. Thereafter, on November 8, 1982, the Department of Environmental Protection of the State of New Jersey (DEP) commenced an adversary proceeding, naming Carracino as defendant, seeking a finding that ten [1] debts allegedly due the State of New Jersey from Carracino are nondischargeable pursuant to the provisions of Title 11. The debts in question arise from Carracino's operation of the Chemical Control Corporation (CCC). Six of the debts, totaling some $388,361.18, relate to CCC's sales and/or state income taxes. Two of the debts relate to the payment of fines. Neither of these fines were the result of the imposition of a tax penalty.

■ The two remaining debts, each reduced to judgment, one in the sum of $23,672,192.68, the other $60,719.16, represent expenditures of the State in the cleanup operation of the Elizabeth River, allegedly polluted as the result of fire causing hazardous wastes, stored in twenty thousand drums at a CCC dump site, to escape and flow into the river.[2] The State, asserting Carracino's liability for these expenditures, alleges that (1) he was in control of the dump site when some or all of the hazardous wastes were placed thereon; (2) he

1. There are only nine debts listed in paragraph three of the adversary complaint. The second debt in that list, however, is divided into two parts. The court treats these parts as separate debts.

2. Three years after Carracino maintains he was last associated with the dump site, the State also found an underground pipe system "apparently used for chemical dumping." It is not clear whether the State is also alleging that Carracino was somehow responsible for injuries sustained as a result of dumping wastes through that pipe system. If it is, however, the State has not established any connection between Carracino and such injury sufficient to make any resulting liability nondischargeable.

continued in control of the site during the time in which the hazardous wastes were accumulated and discharged into the Elizabeth River, for which Carracino is strictly liable under the environmental protection statute for cleanup costs occasioned by such discharge. N.J.S.A. 58:10–23.11g[c] provides:

> Any person who ... is in any way responsible for any hazardous substances which the department [of Environmental Protection of the State of New Jersey] has removed or is removing pursuant to subsection b of section 7 of this act [the Spill Compensation and Control Act] shall be strictly liable ... without regard to fault, for all cleanup and removal costs.

Carracino does not dispute personal liability of those two debts.

Thereafter, on October 5, 1982, the State filed a notice of motion for summary judgment on its complaint, followed by the cross motion filed by the defendant for dismissal and summary judgment. The Court now considers, upon the papers filed, the above motions.

Fed.R.Civ.P. 56, made applicable to adversary proceedings by Bankruptcy Rule 7056, states:

> [a] ... A party seeking to recover upon a claim ... may ... move ... for a summary judgment in his favor.... [b] ... A party against whom a claim ... is asserted ... may ... move ... for a summary judgment in his favor.... [c] ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In support of the nondischargeability of the debts relating to the river pollution, the State argues that Carracino caused the accumulation of the hazardous wastes which polluted the Elizabeth River; that one who causes the accumulation of hazardous substances, polluting a New Jersey river, is, pursuant to environmental protection law, strictly liable for the cost of cleaning up such pollution; that any act giving rise to strict liability for the violation of an environmental law constitutes willful and malicious conduct as a matter of law; that Carracino's liability, allegedly arising from willful and malicious conduct, falls within the exception to discharge contained in 11 U.S.C. § 523[a][6]. Applying F.R.C.P. 56, the Court finds that the State is not entitled to summary judgment. The Court rejects the third premise of the State's argument—that any act giving rise to a strict liability environmental law offense constitutes willful and malicious conduct as a matter of law.

The State premises its argument on the holding of the Supreme Court in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), arguing specifically that (1) *Tinker* defines "malicious" as that term was used in § 17 of the Bankruptcy Act of 1898; (2) the *Tinker* definition of the term "malicious" applies to § 523[a][6];[3] (3) the *Tinker* definition of the term "malicious" encompasses debts arising from strict liability. In support, the State cites *In re McCloud*, 7 B.R. 819 (Bankr.M.D.Tenn. 1980) and *In re Rines*, 18 B.R. 666 (Bankr. M.D.Ga.1982).[4]

> [T]he mere harboring of a vicious dog although it is permitted to escape negligently to cause injury is not the deliberate and intentional conduct by the debtor required for nondischargeability of a debt for the resulting injury, as causing 'willful and malicious injury by the debtor' within the meaning of Section 523[a][6].

The Court notes that harboring a vicious dog which escapes to cause injury is analogous to keeping hazardous wastes which escape to cause injury.

---

**3.** One line of decisions interprets *Tinker* to characterize as malicious any "conduct entered into with reckless disregard for the rights of others that caused damage." *Kelt v. Quezada* (In re Quesada), 718 F.2d 121, 122 (5th Cir.1983). The state concedes that this standard is not applicable to § 523[a][6], i.e., that one does not now show malice by demonstrating recklessness.

**4.** The Fifth Circuit rejected *Rines* in *Kelt v. Quezada* (*Matter of Quezada*, 718 F.2d 121 (1983). In *Quezada*, the court stated, at 122:

In *Tinker*, a debtor in bankruptcy had sought to discharge a judgment debt arising from the debtor's criminal conversation[5] with the judgment creditor's wife. The Supreme Court held that the debt was nondischargeable under § 17 of the Bankruptcy Act of 1898, which excepted from discharge debts arising from "willful and malicious injuries to the person or property of another," stating at 193 U.S. page 487, 24 S.Ct. page 509:

> [W]e think a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.

It is this language which the State points to as the ultimate interpretive source of § 523[a][6] which, they assert, excepts from discharge all debts based on strict liability.

 The quoted language does not, however, say that any act which causes compensable injury is, by that fact alone, necessarily malicious. The Court finds that the true interpretation of the language of the quote is that such acts as fall within the qualified language of the quote are malicious. For example, to be within the purview of the quote, an act must necessarily cause injury. By comparing the application of that qualification to the facts of *Tinker* with the facts before the Court, it is plain that the qualifying language of *Tinker* does not extend to all debts incurred by reason of the imposition of strict liability.

 In *Tinker*, it would have been physically impossible for the debtor to have committed the act giving rise to his tortious liability without causing injury. This is so because the injury giving rise to the violation of the judgment creditor's marital rights was inherent in the act itself. In contrast, the injury here complained of—

damage to the river—was separable from the act complained of (the accumulation of hazardous wastes). One can theoretically accumulate large quantities of hazardous wastes at a site without necessarily damaging the river adjoining the site.

It is also clear that *Tinker* does not require that malice be implied in all acts giving rise to injury. That passage, found at 489, 24 S.Ct. at 510, states:

> It is not necessary in the construction we give to the language of the exception in the statute to hold that every willful act which is wrong implies malice. One who negligently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True, he drives negligently, and that is a wrongful act, but he does not intentionally drive over the individual.

Carracino is entitled, as a matter of law, to prevail upon the state's argument for the nondischargeability of the river pollution debts. Since the state presents no other argument in response to Carracino's assertion that he is entitled to summary judgment on the facts presented, the court finds that the two river pollution debts ($23,732,911.84) are dischargeable.

With regard to the fines, the state argues that 11 U.S.C. § 523[a][7] applies. That section provides for an exception from discharge for any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than" certain types of tax penalties.

 Carracino admits liability with respect to the $27,000 fine and has raised no issue as to the dischargeability of that fine. The State has shown that that debt is nondischargeable as a matter of law and that the State is entitled to summary judgment on the nondischargeability of that debt.

---

**5.** "Criminal conversation means adulterous relations between the defendant and the spouse of the plaintiff." *Fennell v. Littlejohn,* 240 S.C. 189, 125 S.E.2d 408, 412 (1962) (citations omitted).

Carracino admits the existence of a judgment for the $22,000 fine. He asserts, however, that the fine was reduced on appeal to $2,000. The Court finds that there is a genuine issue as to a material fact, i.e., the amount of the debt, and declines to rule on the dischargeability of the entire debt. As to the $2,000 not in dispute, however, the Court grants the State summary judgment.

With regard to the taxes, the State argues that 11 U.S.C. § 523[a][1][A] applies. That section excepts from discharge any debt "for a tax ... of the kind and for the periods specified in § 507[a][2] or 507[a][6] of this title, whether or not a claim for such tax was filed or allowed." [6] Since only those taxes which are of the kind and for the periods specified fall within the § 523[a][1][A] exception to dischargeability, the State has to establish its right to summary judgment as a matter of law, with information sufficient to determine whether the taxes are of the kind and for the periods specified. As the State has made no such showing, the Court denies its request for summary judgment on the tax debts.

In summary, the Court grants summary judgment to the State on the nondischargeability of debts for fines in the amounts of $27,000 and $2,000. It grants summary judgment to Carracino on the dischargeability of the $23,672,192.68 debt and the $60,719.16 debt, which the State alleged were nondischargeable under § 523[a][6]. The Court denies all requests for summary judgment on the remaining debts.

Submit an order in accordance with the above.

Since the preparation of the opinion, but prior to its issuance, the United States Supreme Court issued its opinion in the case of *Ohio v. Kovacs*, —— U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), which appears to totally support the findings of this Court.

---

**6.** The reference to § 507[a][6] in § 523[a][1][A] should presumably be to § 507[a][7]. Section 507[a][7] contains provisions which were formerly contained in § 507(a)[6].