**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROL KIRBY GRAEF,
Plaintiff-Appellant,

v.

RETIREMENT INCOME PLAN  FOR
EMPLOYEES OF ALBEMARLE
CORPORATION; ALBEMARLE
CORPORATION; SAVINGS PLAN FOR THE

No. 98-1188

EMPLOYEES OF ALBEMARLE
CORPORATION,
Defendants-Appellees,

v.

WAYNE C. KIRBY, II; ROBIN S.
KIRBY; BRANDON K. REEVES,
Third Party Defendants.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-97-3379-3-19)

Argued: September 24, 1998

Decided: December 17, 1998

Before WIDENER, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Edward Hoskins, FOSTER & FOSTER, L.L.P., Greenville, South Carolina, for Appellant. Robert Oliver King, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Greenville, South Carolina, for Appellees. **ON BRIEF:** Paul W. Owens, Jr., LOURIE, CURLEE, BARRETT & SAFRAN, Columbia, South Carolina, for Appellant. Michael T. Brittingham, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Carol Kirby Graef appeals the district court's grant of summary judgment in favor of Albemarle Corporation, the Retirement Income Plan for Employees of Albemarle Corporation (Retirement Plan) and the Savings Plan for Employees of Albemarle Corporation (Savings Plan).**1** Graef challenges the district court's determination pursuant to federal common law that, although she was Kirby's surviving spouse for the purpose of the Plans, she waived her rights to benefits under the Plans when she instituted a family court action seeking an equitable division of marital property and did not appeal from the ruling therein.**2** We agree that Graef is a surviving spouse for the purpose of

_____

**1** For convenience, we refer to the Retirement Plan, the Savings Plan, and Albemarle Corporation collectively as "Albemarle."

**2** Graef filed the original complaint against Albemarle and the Retirement Plan. The parties, with the consent of the court, stipulated on December 1, 1997, that the claims asserted by Graef against the Retirement Plan would also be considered claims against the Savings Plan. Because no issue has been raised regarding Albemarle's determination that Graef's claim for benefits under the Retirement Plan was materially similar to her claim for benefits under the Savings Plan, we refer to both collectively as "the Plans."

2

the Plans and that pursuant to federal common law, Graef waived her rights to benefits when she failed to appeal the family court order that divided the marital property. We therefore affirm the district court's grant of summary judgment.

I.

Kirby and Graef were married on May 10, 1981. They subsequently divorced on August 12, 1987. From July 6, 1987, to November 5, 1992, the parties, although divorced, intermittently resided together. On November 5, 1992, the parties permanently separated, and shortly thereafter, Graef sued Kirby in family court for separate maintenance and support and sought an equitable division of the marital assets. In that suit, Graef claimed that the 1987 divorce decree was null and void, and in the alternative, that the parties had formed a common law marriage as a result of their cohabitation from July 1987 to November 1992. The family court held a hearing on the matter on July 13, 1993. On September 7, 1993, the family court issued an order finding that the parties had established a common law marriage following their divorce. As part of its order, the family court awarded Graef separate maintenance and support and equitably apportioned Kirby's and Graef's marital assets. Included among the assets considered as marital property was Kirby's "retirement account at Ethyl Corporation" that accrued during the marriage. [3] In the equitable distribution of the marital assets, Graef's interest in a portion of the retirement account, as well as the remaining marital property, was satisfied by transfer to her of the family home and an award of $2,718.80 in cash, payable by Kirby.

Although neither Kirby nor Graef appealed the manner in which the marital assets were apportioned and distributed, Kirby appealed the family court's determination that their 1987-1992 cohabitation constituted a common law marriage. Unfortunately, while his appeal of the family court's common law marriage ruling was pending, Kirby died in an automobile accident. On December 8, 1994, the South Carolina Court of Appeals affirmed the family court's decision

_____

[3] Ethyl Corporation is the predecessor of Albemarle Corporation. The parties do not contest that the "retirement account" includes Kirby's interest in both the Retirement Plan and the Savings Plan.

3

on the common law marriage issue. Kirby's estate pursued it no further. Graef later remarried.

On October 13, 1995, the South Carolina Court of Common Pleas, County of Orangeburg, determined that Graef was not a surviving spouse for the purposes of the South Carolina Probate Code because the family court order of September 7, 1993, was a final order that terminated all marital property rights between the parties. The state court held that Graef was not in line to receive a share of Kirby's estate by operation of the South Carolina rules of intestate succession. Graef did not appeal this decision.

In 1996, Kirby's three children from a prior marriage submitted claims for the benefits at issue in this appeal. Albemarle, relying on the state court's determination that Graef was not a surviving spouse, determined that Kirby's children were the appropriate beneficiaries under the Plans and disbursed the benefits to them. **4** Graef subsequently filed a claim for these benefits, asserting that she was Kirby's surviving spouse and, under the terms of the Plans, was entitled to the benefits.**5** By letter dated August 15, 1997, Albemarle denied Graef's claims. Albemarle concluded that the determination by the state court that Graef was not a surviving spouse was dispositive of her claim. On October 31, 1997, Graef filed this ERISA suit in the United States District Court for the District of South Carolina to recover the benefits.

_____

**4** On December 11, 1997, Albemarle filed a third party complaint against Kirby's children, seeking reimbursement from them if the district court determined that Albemarle paid Kirby's benefits to them in error. The children have not joined the defense of this appeal because the district court determined that Graef was not entitled to Kirby's benefits, and therefore, they have no current liability to reimburse the Plans.

**5** The Plan Administrator determined that Kirby's beneficiary designation on file with the Retirement Plan on the date of his death did not name Graef as the beneficiary of his Retirement Plan benefit. Because Albemarle determined that Graef's claim for benefits under the Retirement Plan was materially similar to her claim for benefits under the Savings Plan, we assume that Kirby's beneficiary designation on file with the Savings Plan on the date of his death also did not name Graef as the beneficiary.

On cross motions for summary judgment filed by Albemarle and Graef, the district court first found that Graef was the surviving spouse for the purpose of the Plans. The district court then applied federal common law and found that Graef waived her claim to benefits under the Plans when she instituted the family court action that divided the marital estate and did not appeal from the resulting marital property division. Based on the latter finding, the district court granted Albemarle's motion for summary judgment. Graef appeals this ruling, arguing that her waiver of benefits is governed by ERISA, rather than federal common law, and that her filing a family court action seeking, and being awarded, an equitable division of marital property did not comport with ERISA's spousal waiver requirements as set out in 29 U.S.C.A. § 1055(c)(2)(A) (West Supp. 1998).

II.

Summary judgment is appropriate only if there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)). Because, as both sides agree, there are no material facts in dispute, summary judgment is appropriate in this case. This Court reviews a grant of summary judgment de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).

III.

Graef first asserts that the district court's decision that she is a surviving spouse for the purpose of the Plans was proper; Albemarle contests Graef's assertion that she is a surviving spouse. Albemarle argues that in denying Graef's claim to Kirby's benefits, it correctly relied upon the state court's holding that Graef was not Kirby's surviving spouse for the purposes of the South Carolina Probate Code. Thus, Albemarle argues, Graef is not Kirby's surviving spouse for the purposes of the Plans either.

Albemarle acknowledges that the Plans are subject to ERISA. It is well-established that an ERISA regulated benefit plan is interpreted "using ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense." Bailey v. Blue Cross & Blue Shield,

5

67 F.3d 53, 57 (4th Cir. 1995). If the plan language is unambiguous, this Court will not defer to a contrary interpretation by the plan administrators. Davis v. Burlington Indus., 966 F.2d 890, 895 (4th Cir. 1992). In interpreting a plan, "[c]ontract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage." Goodman v. RTC, 7 F.3d 1123, 1127 (4th Cir. 1993).

The parties dispute the meaning of the term "surviving spouse." The Plan defines surviving spouse as follows:

> 1.42. Surviving Spouse or Spouse means, unless otherwise provided in a Qualified Domestic Relations Order pursuant to Plan section 13.04, a Member's spouse to whom he was married, as determined under the laws of the jurisdiction in which the Member resided at the time of determination, at the earlier of his Annuity Starting Date or the date of his death.

(J.A. at 65-66.) The problem with Albemarle's interpretation of "surviving spouse" is that it focuses solely on the phrase "as determined under the laws of the jurisdiction in which the Member resided at the time of determination" to the exclusion of the phrase immediately preceding: "a Member's spouse to whom he was married." Under the plain language of the Plans, and reading the definition to give every word meaning, Graef is Kirby's surviving spouse if she was a person "to whom he was married, as determined under the laws [of South Carolina]" at the date of his death.

Under South Carolina law, a marital relationship "continues until death or dissolution by proper judicial decree." Fennell v. Littlejohn, 125 S.E.2d 408, 412 (S.C. 1962), superseded by statute on other grounds, Russo v. Sutton, 422 S.E.2d 750 (S.C. 1992). At the time of his death, it is undisputed that Kirby was in a valid common law marriage with Graef and that there was no "proper judicial decree" dissolving the marriage. In South Carolina, a common law marriage is the same in all respects as a ceremonial marriage. See Campbell v. Christian, 110 S.E.2d 1, 4-5 (S.C. 1959) (holding that a common law marriage is legal and cannot be invalidated by one party's disavowal of it). Indeed, although the state court determined that Graef was not

6

Kirby's surviving spouse for the purposes of the South Carolina Probate Code, it specifically noted that Graef was still married to Kirby under South Carolina law. The district court therefore properly determined that Graef is the surviving spouse for the purposes of the Plans.

IV.

Graef next argues that, as a surviving spouse, her waiver of rights to benefits under the Plans is governed by a specific ERISA provision, rather than federal common law. Graef further argues that she did not waive her rights to benefits under the Plans by instituting a family court action and by not appealing from the resulting family court order dividing marital property because that order did not meet the ERISA requirements for waiver set out in 29 U.S.C.A. § 1055(c)(2)(A) (West Supp. 1998).

The Retirement Equity Act (REA), 98 Pub. L. No. 98-397, 98 Stat. 1426 (1984), amended ERISA "to ensure that a participant's spouse receives survivor benefits from a retirement plan even if the participant dies before reaching retirement age." Hurwitz v. Sher, 982 F.2d 778, 781 (2d Cir. 1992). ERISA, as amended, provides that each pension plan to which 29 U.S.C. § 1055 applies shall provide a "qualified preretirement survivor annuity" to the surviving spouse of a plan participant. 29 U.S.C.A. § 1055(a)(2) (West Supp. 1998). The object of the surviving-spouse annuity, and the rest of § 1055, "is to ensure a stream of income to surviving spouses." Boggs v. Boggs, 117 S. Ct. 1754, 1761 (1997).

ERISA states that "a plan meets the requirements of this section only if under the plan, each participant may elect at any time during the applicable election period to waive the . . . qualified preretirement survivor annuity form of benefit." 29 U.S.C.A.§ 1055(c)(1)(A)(i) (West Supp. 1998). ERISA further provides that a participant's waiver of benefits shall not take effect unless

> (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of fur-

7

ther consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

29 U.S.C.A. § 1055(c)(2)(A) (West Supp. 1998). **6** The clear objective of this section is to protect surviving spouses by requiring of them an informed waiver. In order to effect a valid waiver, a participant must obtain his or her spouse's consent in writing before a notary public or plan representative, the waiver must designate an alternative beneficiary, and the spouse's consent must acknowledge the effect of the waiver.

Albemarle argues, and the district court agreed, that this case is not governed by ERISA, but by federal common law. If ERISA does not address an issue directly, "federal courts may resolve it by developing federal common law." Estate of Altobelli v. IBM, 77 F.3d 78, 80 (4th Cir. 1996). Albemarle relies on the recent decision of this Court in Altobelli, which held that a participant's former spouse, who was the designated beneficiary under her ex-husband's ERISA plan, can waive her benefits through specific language in a marital settlement agreement that is incorporated into a divorce decree. Id. at 80-81; see also Mohamed v. Kerr, 53 F.3d 911, 914 (8th Cir. 1995); Brandon v. Travelers Ins. Co., 18 F.3d 1321, 1327 (5th Cir. 1994); Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275, 280-81 (7th Cir. 1990) (en banc). The Altobelli court concluded that because the purpose of ERISA's anti-alienation clause**7** was to ensure pensioners a steady stream of income, "[t]o bar a waiver in favor of the pensioner himself would not advance that purpose." 77 F.3d at 81. Albemarle argues that because Graef is a nonparticipant spouse, this case falls squarely under the holding of Altobelli, and Graef waived her claims to benefits under the Plans by not appealing the family court order dividing the marital property.

_____

**6** This provision for spousal waiver is located in Retirement Plan § 5.03(c).

**7** "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A.§ 1056(d)(1) (West Supp. 1998).

8

Graef argues that <u>Altobelli</u> is distinguishable from this case because <u>Altobelli</u> involved a former spouse who claimed a right to benefits of her ex-husband's pension plan and insurance plan as a designated beneficiary, while Graef claims a right to benefits under the Plans as a surviving spouse. Graef argues that her status as a surviving spouse brings her under the coverage of ERISA, and specifically, 29 U.S.C.A. § 1055. By its plain language, however, § 1055 applies only to a waiver of a spouse's benefits by a participant; it does not cover a waiver of a spouse's benefits by the spouse, absent an election by the participant to waive. The participant in the Plans was Kirby. Neither party in this case alleges that Kirby effected a waiver of Graef's benefits under the Plans by being a defendant in the family court action.**8**

Because ERISA, by its terms, does not cover the waiver of benefits by a spouse, the district court properly resorted to federal common law in deciding this case. We agree with the district court that our holding in <u>Altobelli</u> governs this case even though this case involves a waiver of benefits by a spouse via a judicial order rather than a waiver of benefits by a former spouse via a voluntary property settlement between the parties. We believe that <u>Altobelli</u> stands for the proposition that a nonparticipant beneficiary can waive rights to benefits in an ERISA plan where that individual demonstrates a clear intent "to relinquish all interests" in the plan through a specific and voluntary waiver. <u>See Altobelli</u>, 77 F.3d at 81; <u>see also Fox Valley</u>, 897 F.2d at 280-81. The family court's division of the marital property was sufficiently specific to constitute a waiver by Graef of benefits under the Plans because it expressly transferred to Kirby his "retirement account at Ethyl." It was also the product of a knowing and considered decision by Graef, who initiated the family court action and did not appeal from the ruling therein. The district court therefore properly concluded that Graef waived her rights to benefits under the Plans.

_____

**8** The issue of whether, consistent with § 1055, a participant can waive a spouse's benefits by initiating, or actively participating in, a family court action brought by either the participant or the spouse and that which results in a judicial division of marital property is one we leave for another day.

9

V.

In sum, we agree with the district court that Graef was a surviving spouse for the purpose of the Plans and that Graef waived her rights to benefits under the Plans when she instituted the family court action and did not appeal from the resulting marital property division. We therefore affirm the district court's grant of summary judgment.

AFFIRMED