**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARY STEINKE, Individually and as
Personal representative of the Estate
of Zachary Steinke; MIKE STEINKE,
Individually and as Personal
representative of the Estate of
Zachary Steinke,
Plaintiffs-Appellees,

v.

BEACH BUNGEE, INCORPORATED;
CAROLINA LANE HOLDING COMPANY
OF LITTLE RIVER, INCORPORATED;          No. 96-1105
CHARLES VEREEN; HAROLD MORRIS;
BILLY PLAYER,
Defendants-Appellants,

and

MARSHALL BEAM; RECREATIONAL
STRUCTURES, INCORPORATED;
INGERSOLL-RAND COMPANY; MASTER
MECHANIC MANUFACTURING
COMPANY,
Defendants.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
William B. Traxler, Jr., District Judge.
(CA-93-2679-21-4)

Argued: December 5, 1996

Decided: January 29, 1997

Before WILKINSON, Chief Judge, and ERVIN and HAMILTON,
Circuit Judges.

Affirmed in part and vacated and remanded in part by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Ervin and Judge Hamilton joined.

_____

## COUNSEL

**ARGUED:** Thomas Casey Brittain, HEARN, BRITTAIN & MARTIN, P.A., Myrtle Beach, South Carolina, for Appellants. John Daniel Kassel, SUGGS & KELLY, Columbia, South Carolina, for Appellees. **ON BRIEF:** Scott B. Umstead, HEARN, BRITTAIN & MARTIN, P.A., Myrtle Beach, South Carolina, for Appellants.

_____

## OPINION

WILKINSON, Chief Judge:

Beach Bungee, Carolina Lane Holding Company, and the owners of these two companies appeal from a large verdict for the wrongful death of Zachary Steinke. Owners Charles Vereen and Billy Player contend that their motion for judgment as a matter of law should have been granted because they are shielded from individual liability by the corporate form. All of the appellants argue that their motion for remittitur should have been granted because the $12 million jury verdict for emotional damages was excessive. We affirm on the issue of Vereen and Player's individual liability, holding that the evidence in this case supports the jury's finding that Vereen and Player participated directly in the tortious activity that led to Zachary Steinke's death. We remand the issue of remittitur for reconsideration in light of Gasperini v. Center for Humanities, Inc., 116 S. Ct. 2211 (1996).

I.

On August 10, 1993, Zachary Steinke ("Zack"), the 17-year-old son of Mike and Mary Steinke, was killed at an attraction called Beach Bungee near Myrtle Beach, South Carolina. While his parents watched, Zack and an employee of Beach Bungee were lifted from the ground in a steel cage pulled by a single cable attached to an elec-

tric winch. The ride operator, owner Harold Morris, became distracted and failed to stop the cage when it reached the top. The winch continued to pull, the cable snapped, and the cage plummeted 160 feet killing both Zack and the Beach Bungee employee. Zack's parents attempted to perform artificial respiration but were unable to revive their battered and bleeding son. The evidence showed that both parents were profoundly shaken by the event.

Later investigations revealed that the system used by Beach Bungee was neither safe nor properly licensed. It contained no device which would have shut down the winch in the event of over-travel; it had no safety cables; and it had no controls which would have allowed individuals in the cage to shut down the winch. Despite the fact that the Beach Bungee owners had recently secured a license for another bungee jump lift, the winch and cable device which caused Zack's death was never licensed by the South Carolina Department of Labor. Even though the equipment was not licensed, Beach Bungee displayed a South Carolina Department of Labor inspection plate that had been issued for a previous device. Furthermore, the equipment that lifted Zack had a warning label which stated,"Caution: not suitable for lifting or lowering persons."

Much of the evidence at trial concerned how Beach Bungee had come to use the unsafe device. A hydraulic lift or"crawlevator" that originally lifted patrons of the bungee jump was never satisfactory to Morris, Player, and Vereen. It often broke down and was apparently underpowered. Link Davis, the crawlevator manufacturer representative, testified that he had spoken to Vereen about the problems, and Vereen had expressed a preference of going to a winch and single cable device. Davis explicitly warned Vereen that this would not be a safe system, and testified that his warnings were"as emphatic as I could [give] without cussing and hollering and walking off the job."

Forrest Davidson, a contractor and former Beach Bungee employee, testified that he had conversations with Vereen and Morris regarding the installation of a new winch and cable system. He informed them that it would require six to eight weeks to find an engineer and have the system installed safely. Link Davis also testified that he told Morris and Vereen that they should hire an engineer for the project. Despite these warnings, and the fact that Beach Bungee's

own operating manual called for inspection by a professional engineer, the Beach Bungee owners rejected hiring a professional engineer because they wanted to have a system in place quickly so that they would not miss the peak tourist season.

Billy Player thus sought out Marshall Beam, a shrimp boat repairman, to help find and install a winch system. Beam was not only not a professional engineer, he had no licenses or certifications, and had no experience in designing or installing amusement devices or elevators. Player and the other owners made a joint decision to hire Beam. Beam testified that no one asked for his qualifications and that it was the owners' idea to use a winch and single cable system. Beam promised to get the job done quickly, and at the bargain rate of $25 an hour.

Morris bought the winch for the project. When it arrived on the site, Beam, Morris, and Player were present. Beam pointed out the winch's warning that it was not suitable for lifting persons, but neither Morris nor Player raised any objections. In fact, at some point someone attempted to scratch out the word "persons" on the warning. Beam installed the winch system, and it began carrying people approximately ten days before Zack was killed in August 1993.

After Zack fell to his death, Mr. & Mrs. Steinke brought the instant wrongful death action. Since Zack was only 17, there was no allegation that the parents suffered monetary damages or loss of support. Instead, they sought emotional damages as allowed under South Carolina law, including damages for grief, shock, sorrow, wounded feelings, and loss of companionship and society. See Zorn v. Crawford, 165 S.E.2d 640, 645 (S.C. 1969). At the close of evidence, the district court ruled that Beach Bungee, Carolina Land Holding Company, Harold Morris, and Marshall Beam were negligent as a matter of law. Vereen and Player moved for judgment as a matter of law, arguing that they were shielded from personal liability. The district court denied this motion and submitted special verdict forms to the jury. The jury was asked to determine whether Vereen and/or Player had personally participated in one or more of three acts which, in the court's opinion, would have rendered them individually liable. These acts included:

4

    1. The use of a lift system with only one cable with no safety control;

    2. The hiring of Marshall Beam; and

    3. The use of the system without a license by the South Carolina Department of Labor.

The jury found that Vereen and Player had participated in each of the acts enumerated on the special verdict forms, and returned a verdict of $12 million in actual damages for Mr. & Mrs. Steinke. The jury also found that Vereen, Player, Morris, Beach Bungee, and Carolina Land Holding Company had acted recklessly. Vereen and Player then filed a post-trial motion under Fed. R. Civ. P. 50 contesting their individual liability. In addition, all of the defendants except Beam moved jointly for remittitur, contending that the verdict was excessive. Both motions were summarily denied, and this appeal followed.

II.

Charles Vereen and Billy Player maintain that they are protected from personal liability for Zack's death by the fact of Beach Bungee's and Carolina Lane Holding Company's incorporation. In South Carolina, there is a strong presumption that "an officer or a director of a corporation is not, merely as a result of his standing as such, personally liable for torts" of the corporation. Hunt v. Rabon, 272 S.E.2d 643, 644 (S.C. 1980). However, in those rare cases where a corporate director has "in some way participated in or directed the tortious act," personal liability will attach. Id.; Rowe v. Hyatt, 468 S.E.2d 649, 650 (S.C. 1996); see also Tillman v. Wheaton-Haven Recreation Association, Inc., 517 F.2d 1141, 1144 (4th Cir. 1975). The jury here found that Vereen and Player had "participated in or directed" the tortious act that led to the death of Zachary Steinke in three different ways: (1) each director had participated in the decision to use a clearly unsafe lift system with only one cable and no safety devices; (2) each had participated in the decision to hire an unqualified individual to install this dangerous system; and (3) each had participated in the decision to use the system without having it properly licensed by the South Carolina Department of Labor.

5

There was ample evidence to support the jury's findings that Vereen and Player were personally involved in the tortious conduct that led to Zachary Steinke's death. See Charleston Area Medical Center, Inc. v. Blue Cross and Blue Shield of Ohio, Inc., 6 F.3d 243, 247-48 (4th Cir. 1993). Vereen proposed the idea of switching to a single cable and winch system to Link Davis, and persisted in pursuing this plan despite Davis's emphatic warning that it would be unsafe. Player was present when the winch arrived, and Marshall Beam alerted Player to the warning on the winch that it was not suitable for lifting persons. Player, however, chose to support the use of the system. Both Player and Vereen were aware of the hazards of using a single cable lift. In 1992, they had operated a bungee jump with a crane and single cable but abandoned that system due to safety concerns when they noticed the single cable had become badly frayed. None of the Beach Bungee owners, however, required the installation of even basic safety devices on the lift system despite the fact that Beam had alerted Morris that such devices were lacking. Furthermore, Walt Flowers, an OSHA investigator who interviewed Morris following Zack's death, testified that Morris admitted that the winch system "was a temporary system and that after Labor Day they were going to get an engineer to come in and certify something to go into it." Beam testified that Player and Morris told him to build something that would "just get through the season." Given these facts, the jury could reasonably have concluded that the owners took a calculated risk with the lives and safety of their patrons in order to realize profits at peak season.

Furthermore, both Player and Vereen were instrumental in hiring an unqualified individual to install this unsafe system. Forrest Davidson and Link Davis both testified that they warned Vereen that the project would require a professional engineer to be done properly. The Beach Bungee owners, however, rejected this advice because they concluded that it would take too long to find an engineer and develop the engineering plans. Instead, Billy Player sought out a shrimp boat repairman to do the job. Ignoring the warning in their own operations manual that failure to have work inspected by a licensed engineer could have potentially fatal consequences, the Beach Bungee owners did not inquire into Marshall Beam's qualifications.

6

There was also sufficient evidence for the jury to conclude that Vereen and Player were aware that the single cable and winch system should have been licensed by the South Carolina Department of Labor. The owners had just completed the licensing process for the crawlevator lift in May 1993, and Davis had specifically warned Vereen that changes to the lift system would have to be approved by the state. The owners nonetheless failed to have the winch and cable system approved or inspected. However, they displayed the old inspection plate from the crawlevator on the door of the cage used in the winch and cable system. The jury could easily have inferred that the owners were aware of the South Carolina licensing requirements but chose not to follow them because they realized that the winch and single cable system would never have been approved by the state.

Despite the ample evidence supporting the jury's decision, Vereen and Player attempt to avoid liability by analogizing their case to the circumstances considered by the South Carolina Supreme Court in Hunt v. Rabon. Their reliance on Hunt is misplaced. In that case, the court rejected the plaintiffs' theory that the directors of a hospital should have been individually liable for failure to properly oversee the installation of a defective medical gas system. Unlike the instant case, however, Hunt included no allegation that the hospital directors actively promoted the installation of what they knew positively was a patently dangerous system. See Hunt, 272 S.E.2d at 644.

A corporation is created to limit personal liability. We emphasize that the finding of personal liability for a corporate officer or director is an unusual and extraordinary event. But this case is not, as Vereen and Player would have us believe, an instance in which corporate directors reasonably relied on the competency of an employee to do a task. The facts tell a far different story. The three owners of Beach Bungee personally directed the use of a lift system they knew to be dangerous, and chose to have the device installed on the cheap by an unqualified shrimp boat mechanic so that they would not lose money during the busy summer tourist season. Their every action flew in the face of warnings that the lives of others would be endangered. This reckless conduct led directly to the death of Zachary Steinke. The jury's finding of individual liability against Vereen and Player, and the further finding of recklessness, were fully justified. We therefore

7

affirm the denial of Vereen and Player's post-trial motion for judgment as a matter of law.

III.

We turn next to appellants' contention that the district court allowed an impermissibly excessive verdict to stand when it denied their motion for remittitur. In Gasperini v. Center for Humanities, 116 S. Ct. 2211 (1996), the Supreme Court addressed the proper standards for considering a motion for remittitur. Finding that the principles of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), preclude "a recovery in federal court significantly larger than the recovery that would have been tolerated in state court," Gasperini, 116 S. Ct. at 2221, the Court held that a district court sitting in diversity must apply state law standards to determine whether a verdict is excessive. Id. at 2224-25. Nothing in the record indicates whether the district court referred to South Carolina standards when it considered the motion for remittitur. Because the Supreme Court has now definitively established that state law must govern the disposition of such a motion, we must remand this case so that the district court may apply the standards set forth in South Carolina law.

The Supreme Court's mandate requires the district court to apply the substantive component of a state's law concerning the excessiveness of a verdict. Thus, in Gasperini, the Court held that the district court was obliged to apply New York law to determine if the verdict would "deviate materially" from damage awards in similar circumstances. Id. at 2224-25. Under South Carolina's common law standard, "[i]f the trial judge, in the exercise of his discretion, is convinced that the amount awarded is over-liberal, he has the authority and corresponding duty to reduce the verdict by order nisi." Hicks v. Herring, 144 S.E.2d 151, 154 (S.C. 1965) (citations omitted). Furthermore, "[i]f the verdict appears so excessive as to indicate that it was the result of caprice, passion or prejudice, both the trial judge and [reviewing courts] are under a duty to set it aside." Fennel v. Littlejohn, 125 S.E.2d 408, 414 (S.C. 1962).

Gasperini also addressed the proper role of federal appellate courts when reviewing a district court's decision on a motion for remittitur. Prior to Gasperini, the Supreme Court had not resolved the issue of

8

whether the Seventh Amendment prohibited appellate review of a district court's refusal to grant a remittitur. Gasperini, 116 S. Ct. at 2223. In Gasperini, the Court approved the practice of excessiveness review in the courts of appeal, and held that a district court's decision on the question of remittitur should be reviewed under an "abuse of discretion" standard. Id. at 2225; see also Johnson v. Hugo's Skateway, 974 F.2d 1408, 1414 (4th Cir. 1992) (en banc) (reviewing trial judge's determination that a jury's award of compensatory damages was not excessive under an abuse of discretion standard); Defender Industries v. Northwestern Mutual Life Insurance Co., 938 F.2d 503, 507 (4th Cir. 1991) (en banc) (reviewing district court's determination on whether or not to set aside a verdict as excessive under an abuse of discretion standard).

In order to review the district court's ruling for abuse of discretion, however, we must have some idea of the basis for the exercise of that discretion. In this case, the district court simply ruled the remittitur motion "denied." Given that a verdict of great magnitude is at issue, the single word "denied" sheds too little light on the reasoning of the trial judge. The $12 million verdict in this case was based entirely on compensatory damages for emotional distress in a case where no pecuniary loss was claimed. While we might be able to speculate as to the reasons for the district court's decision, this would deprive us of the perspective that led the Supreme Court to "lodge in the district court, not the court of appeals, the primary responsibility" of applying state standards to motions for remittitur. Gasperini, 116 S. Ct. at 2225.

Accordingly, in determining on remand whether the jury's verdict was rendered in accordance with South Carolina law, the district court should look to South Carolina cases to determine the range of damages in cases analogous to the one at hand. See Imbrogno v. Chamberlin, 89 F.3d 87, 90 (2d Cir. 1996); Douglass v. Delta Airlines, Inc., 897 F.2d 1336, 1339 (5th Cir. 1990). If the court believes that a departure from that range is justified, it should provide the reasoning behind its view. If the court determines that there are no comparable cases under South Carolina law, it should explain this determination as well. Such a decision by the district court will reduce the risk of caprice in large jury awards and will assure a reviewing

9

court that the trial court exercised its considered discretion under the applicable state law.

IV.

We affirm the judgment of the district court on the issue of Charles Vereen and Billy Player's individual liability for the death of Zachary Steinke. We vacate the damage award and remand this case to the district court for consideration of appellants' motion for remittitur under South Carolina law.

AFFIRMED IN PART, VACATED AND REMANDED IN PART

10