UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOYCE MARTIN, Individually and as
Personal Representative of the
Estate of Harry O. Martin,
deceased,
Plaintiff-Appellee,

v.

DIAMANT BOART AMERICA,
INCORPORATED,
Defendant-Appellant.

No. 96-1414

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-92-2982-3-0)

Argued: May 6, 1997

Decided: May 30, 1997

Before WILKINSON, Chief Judge, WILKINS, Circuit Judge, and
TRAXLER, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed in part and remanded in part by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** Timothy William Bouch, YOUNG, CLEMENT, RIVERS
& TISDALE, L.L.P., Charleston, South Carolina, for Appellant.

James Marcus Whitlark, FEDOR, MASSEY, WHITLARK & BAL-LOU, Columbia, South Carolina, for Appellee. **ON BRIEF:** Stephen P. Groves, W. Jefferson Leath, Stephen L. Brown, YOUNG, CLEMENT, RIVERS & TISDALE, L.L.P., Charleston, South Carolina; Mary L. Barrier, MORRISON & HECKER, Kansas City, Missouri, for Appellant. David A. Fedor, Paul C. Ballou, FEDOR, MASSEY, WHITLARK & BALLOU, Columbia, South Carolina; James B. Richardson, Jr., SVALINA, RICHARDSON & LARSON, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Harry and Joyce Martin sued Diamant Boart America ("DBA") claiming that DBA had illegally dumped hazardous chemicals, contaminating the Martins' property. The case was tried before a jury, which awarded $31,000 in damages for trespass and $1,000,000 in punitive damages. DBA appeals, arguing that there was insufficient factual support for the verdict, that the jury was improperly instructed as to punitive damages, and that the district court failed to review DBA's motion for remittitur according to South Carolina law as required by Gasperini v. Center for Humanities , 116 S.Ct. 2211 (1996). We find that the jury's verdict was supported by the evidence. We therefore affirm the district court on the issue of liability. The punitive damages instructions also comported with South Carolina law. However, we remand the issue of remittitur for reconsideration in light of Gasperini.

I.

DBA operates a plant in Richland County, South Carolina, which manufactures engineered diamond products such as saw blades, drill

bits, and grinding wheels. Hazardous chemicals used as degreasers are left over from the production process.

In 1990, Harry and Joyce Martin, who lived around 400 feet from DBA's property, discovered that their well was contaminated with trichloroethylene ("TCE"), tetrachloroethylene ("PCE"), and other hazardous chemicals. Other wells in the area were also contaminated. The South Carolina Department of Health and Environmental Control advised the Martins and others to cease using their wells for drinking, bathing, or cooking.

In early 1992, Harry Martin was diagnosed as suffering from pancreatic cancer. Prior to his death in October 1992, Harry Martin and his wife filed suit against DBA claiming personal injury and property damage. At trial, DBA denied using TCE at its plant. Martin countered this contention with testimony from a salesman who had sold TCE to DBA and with testimony from ex-DBA employees that DBA had both used and improperly dumped large amounts of hazardous chemicals.

DBA responded to this evidence with studies which concluded that DBA was not the source of the contamination of the Martins' property. Indeed, there was conflicting evidence as to whether TCE was even detected in significant quantities in the samples taken from DBA's property and samples taken from the property between DBA and the Martins' property. Martin explained the low level of contamination on DBA's land with expert testimony that the contaminants had "migrated" from DBA's property over time, and that the low levels of contaminants resulted from recent changes in DBA's waste disposal measures.

Following a three-week trial in September and October of 1995, the jury found for DBA on all personal injury and negligence claims, but awarded Joyce Martin $31,000 for nuisance and trespass and punitive damages of $1,000,000. The district court denied DBA's motion for judgment as a matter of law and DBA's motion for a new trial or remittitur. DBA appeals.

II.

As an initial matter, DBA contends that there was insufficient evidence to support the trespass verdict. It primarily argues that the testi-

3

mony of Dr. Jack Parker, Martin's expert witness, was shown to have no factual underpinning and that it should not have been admitted under Daubert v. Merrell-Dow Pharmaceutical, Inc., 113 S.Ct. 2786 (1993). DBA argues that Dr. Parker's testimony was fatally flawed because his theory of how contaminants had migrated to the Martins' property from DBA was contradicted by the evidence. For example, DBA maintains that at most there were low levels of TCE on its own property and the property between the DBA plant and the Martins' property. Thus, it concludes that the DBA plant could not have been the source of TCE and PCE contamination.

However, for every contention raised by DBA, Martin was able to offer a reasonable explanation or provide evidence to the contrary. First, Martin proffered evidence which showed that TCE and PCE were indeed found in DBA's groundwater. She further explained the absence of hazardous chemicals in the samples taken from the inter-vening property by noting that those wells were shallow, and that the chemicals TCE and PCE are "sinkers" which tend to migrate to the lowest point of the aquifer.

While the facts presented by DBA certainly could have done much to undermine the weight of Dr. Parker's testimony, his basic theory of how chemicals migrated to the Martins' property was not inadmis-sible. Indeed, his "mounding" theory of migration appears to have some acceptance in the field of hydrogeology. In fact, it was initially developed in the 1950s by one of DBA's own expert witnesses. We therefore conclude that the trial court did not abuse its discretion by allowing Dr. Parker's testimony into evidence. United States v. Dorsey, 45 F.3d 809, 814 (4th Cir. 1995) (decision to admit or exclude expert testimony under Daubert reviewed for abuse of discre-tion).

DBA also contends that the testimony of former DBA employees as to DBA's dumping of chemical waste should have been excluded as evidence of past acts under Fed. R. Evid. 404(b). This contention is meritless. The testimony of the former employees was not, as DBA alleges, evidence of past acts designed to show that DBA was "once a polluter, always a polluter." Rather the testimony was necessary to establish that DBA had dumped large quantities of the hazardous

4

chemicals in question and was indeed the source of the contaminants found on the Martins' property.

As to DBA's other arguments regarding the factual support of the jury's verdict, suffice it to say that our review of the record reveals no dearth of evidence to support a verdict for either party. Both parties were able to present their case to the jury, and it was for the jury as fact finder to assess the complex evidence and reach a verdict. While reasonable minds may have come to a different conclusion than the one the jury ultimately reached, we cannot say that no reasonable juror could have returned a verdict for Martin. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 351 (4th Cir. 1994). Therefore, we affirm as to DBA's liability.

III.

Next, DBA complains that the jury instruction as to punitive damages was flawed, and therefore the jury's verdict on this issue must be reversed. We disagree. While the instructions in this case were extensive, the fundamental prerequisite for punitive damages was properly set forth by the district court. The court instructed the jury that they should award punitive damages only if DBA had acted recklessly, willfully, or wantonly. This comports with the threshold standard for an award of punitive damages under South Carolina law. See Wise v. Broadway, 433 S.E.2d 857, 859 (S.C. 1993).

DBA further complains that the instruction was erroneous because it stated that a finding of a willful, wanton, and reckless violation required an award of punitive damages in some amount. South Carolina, however, is one of the few jurisdictions where this instruction is correct. See Sample v. Gulf Oil Refinery, 191 S.E. 209, 214 (S.C. 1937); see also Campus Sweater and Sportswear Co. v. M. B. Kahn Construction, 515 F.Supp. 64, 104 (D.S.C. 1979) (following Sample). In any event, even if there had been error in this instruction it was surely harmless. The jury in this case was free to award punitive damages in an amount far less than one million dollars. It is difficult to imagine that setting the minimum amount of damages at zero dollars instead of one dollar would have affected the final verdict in the slightest.

5

IV.

Finally, we turn to DBA's contention that the district court improperly denied its motion for a new trial or remittitur. In Gasperini v. Center for Humanities, the Supreme Court clearly instructed that a district court sitting in diversity must apply state law standards to determine whether a verdict is excessive. 116 S.Ct. at 2224-25. The district court in this case denied DBA's motion before Gasperini was decided, and consequently did not provide an opinion indicating whether or how it followed South Carolina law when it made its ruling. Because of its greater intimacy with the case, the trial court is in a preferable position to determine the propriety of damages. Id. at 2225; see also Steinke v. Beach Bungee, Inc., 105 F.3d 192, 198 (4th Cir. 1997). We therefore remand this case so that the district court may apply the standards set forth in South Carolina law.

The leading South Carolina case on determining whether punitive damages are excessive is Gamble v. Stevenson, 406 S.E.2d 350 (S.C. 1991). In that case, the South Carolina Supreme Court set out eight factors to consider:

> (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness of concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and finally (8) . . . other factors deemed appropriate.

Id. at 354.

On remand, the district court should apply these factors and should "look to South Carolina cases to determine the range of damages in cases analogous to the one at hand." Steinke , 105 F.3d at 198. A reasoned decision by the district court following this approach will "reduce the risk of caprice in large jury awards and will assure a reviewing court that the trial court exercised its considered discretion under the applicable state law." Id.*

_____
*In light of the remand on the punitive damages issue, we need not reach DBA's contention that the jury's verdict exceeded the constitutional standards set forth in BMW of North America, Inc. v. Gore, 116 S.Ct. 1595 (1996).

6

V.

We affirm the judgment of the district court as to the issue of DBA's liability. We remand the issue of punitive damages to the district court for consideration of appellants' motion for remittitur under South Carolina law.

<u>AFFIRMED IN PART, REMANDED IN PART</u>

7