UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

DONALD P. SHAW,
Plaintiff-Appellee,

v.

THE TITAN CORPORATION,

No. 96-2143

Defendant-Appellant,

and

JACK EDDLEMON,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Robert E. Payne, District Judge.
(CA-96-324)

Argued: July 7, 1997

Decided: May 18, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and
Joseph F. ANDERSON, Jr., United States District Judge
for the District of South Carolina,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** K. Stewart Evans, Jr., MCGUIRE, WOODS, BATTLE &
BOOTHE, L.L.P., Washington, D.C., for Appellant. John Michael

Bredehoft, CHARLSON & BREDEHOFT, P.C., Reston, Virginia, for Appellee. **ON BRIEF:** Kelly Marie Boehringer, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Washington, D.C.; John Joseph Michels, Jr., MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., McLean, Virginia, for Appellant. Elaine C. Bredehoft, CHARLSON & BREDEHOFT, P.C., Reston, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donald P. Shaw brought a wrongful termination action against his former employer, Titan Corporation, in the Circuit Court of Fairfax County, Virginia. Shaw alleged that he was fired because of his race, gender, and age in violation of the public policy embodied in the Virginia Human Rights Act. See Va. Code Ann.§§ 2.1-714 to 725 (Michie 1995 & Supp. 1997). The case was removed to federal district court on the basis of diversity of citizenship, and tried before a jury on June 3-7, 1996. The jury returned a verdict for Shaw, awarding $65,000 in compensatory damages and $400,000 in punitive damages.[1]

Titan then filed a motion for judgment as a matter of law and a motion for a new trial pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure. Titan argued: (1) that because it had introduced evidence and argument for the proposition that Shaw was discharged pursuant to a legitimate reduction in its workforce, the district court erred in refusing to give the jury any of Titan's proposed causation instructions;[2] (2) that the public policy of Virginia (on

_____

[1] By consent of the parties, the punitive damages award was reduced to $350,000 in compliance with the Virginia statutory limit on punitive damages. See Va. Code Ann. § 8.01-38.1 (Michie 1992).
[2] Titan had presented, in the alternative, "but-for-causation" instructions (stating that the jury could find Titan liable for damages only if it

2

which the claim for wrongful discharge was premised) does not permit punitive damages for discriminatory conduct in the workplace; (3) that the district court admitted prejudicial evidence; and (4) that the district court erred when it ruled that the punitive damages award was not excessive. The district court denied Titan's post-trial motions. Titan now appeals. For the reasons stated herein, we affirm.

I.

Shaw began working at Titan, a government consulting firm, in 1987. In early 1994, Titan determined that it would have to reduce its workforce to remain profitable. Accordingly, it began evaluating employees and identifying those that could be terminated. Several employees expressed concern that the reduction-in-force appeared to be targeting women and minority employees. Titan formed a committee to administer the reduction-in-force. The committee noted Titan's status under prior "conciliation agreements" with the federal Office of Federal Contract Compliance and Programs (OFCCP), which in auditing the company had found significant under-representation of women and minorities. One member told the committee "that any lay-off action would be subject to meeting a requirement that you did not lay off a disproportionate number of minorities or females." (J.A. at 87-88.)

During the course of committee meetings, the fact that a disproportionate number of women and minorities were being targeted for termination was discussed. As the reduction-in-force proceeded, Ed

_____

found that Shaw would not have been discharged but for illicit discrimination, and that, conversely, the jury could not find Titan liable if it found that the company would have included Shaw in its reduction in force even in the absence of any consideration that it may have given to his race, sex, age, or any combination of these factors), "sole-cause" instructions (stating that the jury could not find Titan liable unless it found that illicit discrimination was the sole cause of Shaw's discharge), and "mixed-motive" instructions (closely tracking the burden-shifting framework followed by the federal courts in Title VII cases where the employee alleges wrongful discrimination and the employer alleges a legitimate business motivation).

3

Knauf, the president of Titan's east coast operation, asked a committee member "if the mix changed, what the impact of that change would be. For example, if we had another white male in the mix, what would be the numbers or our representation?" (J.A. at 664.) Subsequently, a memorandum was prepared which analyzed the impact of "identify[ing] a `sacrificial lamb'" white male, and concluded, "our representation [of women and minorities] is so low that we still have disparity. . . . [W]e are `damned if we do and damned if we don't.'" (J.A. at 1081.)

On March 2, 1994, Shaw's supervisor, Richard Leadbetter, advised Shaw that he would be terminated the next day. When Shaw asked why, Leadbetter intimated that the reduction-in-force process had malfunctioned. The next day Shaw was terminated. Jack Eddlemon, the Titan officer who terminated Shaw, offered Shaw "a world class corporate apology for the way [the workforce reduction] was handled in your case." (J.A. at 325.) He then explained to Shaw that "the company is really vulnerable. . . . [W]e are letting go 10 to 1 women and minorities and we have to have an ace to throw on the pile." (J.A. at 326.) A Titan employee was told that Shaw was chosen to be the "ace on the pile" because of his age: "[T]hey are justifying it because he is the oldest in Jack[ Eddlemon]'s organization." (J.A. at 189.)

Shaw argued at trial that, under the common law of Virginia, he was wrongfully terminated because of his race, gender, and age, in violation of the public policy against such discrimination embodied in the Virginia Human Rights Act. He also argued that punitive damages were appropriate because Titan's conduct, firing him on the basis of race, gender, and age, was reprehensible. At trial, Titan maintained that Shaw was terminated in the regular course of a reduction-in-force.

II.

On appeal, Titan raises four assignments of error arising from the district court's denial of its Rule 50 and Rule 59 motions. First, the company argues that the trial court erred when it failed to instruct the jury on specific theories of causation. Titan argues that the mixed-motive theory of causation was applicable to this action and that the district court committed reversible error because it did not give a

4

mixed-motive instruction. Further, Titan contends that the district court should have given a specific but-for causation instruction. Titan also argues that the district court admitted irrelevant and unfairly prejudicial evidence during the course of the trial. Additionally, Titan asserts that the district court erred in allowing the jury to consider an award of punitive damages because punitive damages are impermissible as a matter of law under the common law of Virginia in a case of wrongful termination in violation of public policy. Finally, the company urges us to reverse the excessive award of punitive damages because the jury's decision was not supported by the evidence. Titan asserts that each of these errors provides the basis for judgment as a matter of law under Rule 50 or for a new trial under Rule 59.

We address these arguments in turn.

A.

Titan raises two arguments presenting novel issues of Virginia law not addressed by controlling precedents. The parties agree that Virginia law applies to this diversity action. We therefore certified the following two questions to the Virginia Supreme Court:

> 1. Whether, under the common law of Virginia, the district court erred in refusing to give the jury an explicit but-for causation, sole-cause, or mixed-motive instruction, and instead instructing the jury that it could find for Shaw on his claim of wrongful termination in violation of public policy if Shaw proved by a preponderance of the evidence,"that Titan terminated him because of his race, his gender, his age, or because of a combination of those factors."

> 2. Whether, under the common law of Virginia, punitive damages may be recovered for wrongful termination in violation of public policy, where the public policy violated is embodied in the Virginia Human Rights Act which expressly prohibits the award of punitive damages.

The Virginia Supreme Court, in its discretion, accepted the certified questions, and issued its opinion on April 17, 1998.

5

In response to the first certified question, the Virginia Supreme Court stated that the common law of Virginia did not require that the plaintiff prove that the improper motive was the sole cause for the discharge. The court also held that Virginia common law did not require that the district court give a specific but-for causation instruction. Additionally, the court noted that the common law of Virginia has not embraced the mixed-motive causation standard. Therefore, the first question was answered in the negative. Based upon the Virginia Supreme Court's answer to our certified question, it is clear that the district court did not err in its jury instructions on causation.

The Virginia Supreme Court responded to the second certified question in the affirmative, noting that Shaw filed his action for wrongful termination before the 1995 amendments to the Virginia Human Rights Act, which barred punitive damages, took effect. Therefore, the action for wrongful termination was governed by the common law of torts. The Virginia Supreme Court reasoned that wrongful termination, like any other intentional tort, could support an award of punitive damages. Because the Virginia Supreme Court answered this question in the affirmative, the award of punitive damages was not erroneous.

B.

In addition to the two points of law addressed by the Virginia Supreme Court, Titan raises two additional arguments before us.

First, Titan argues that the district court admitted irrelevant, inflammatory, and prejudicial evidence that Titan had allegedly discriminated against women and minorities, failed to follow its own internal policies for reduction in force, and was audited by the OFCCP. Titan asserts that this evidence had a tendency to inflame the jury. At trial, however, Titan neglected to contemporaneously object to the admission of this evidence.

A district court's decision to admit evidence at trial is reviewed under the abuse of discretion standard. See Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1357 (4th Cir. 1995). A district court's denial of a Rule 59 motion for a new trial is likewise reviewed for abuse of

discretion. <u>See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.</u>, 99 F.3d 587, 594 (4th Cir. 1996).

We note that "[a] motion for a new trial should not be granted . . . where the moving party has failed to timely object to the alleged impropriety giving rise to the motion." <u>Dennis v. General Elec. Corp.</u>, 762 F.2d 365, 367 (4th Cir. 1985). Because Titan failed to object at the time the "inflammatory" evidence was initially offered, we determine that the district court did not abuse its discretion when it denied the Rule 59 motion.

Second, Titan argues that the district court erred when it denied Titan's motion to reduce or set aside the punitive damages award because that award was not supported by the evidence, was excessive, and constituted a violation of Titan's due process rights. <u>See BMW of N. Am., Inc. v. Gore</u>, 116 S. Ct. 1589, 1598-99 (1996).

Appellate review of a district court's "Rule 50 determination . . . is circumscribed with respect to any facts the jury found, but plenary with respect to any legal conclusions underlying the verdict." <u>Price v. City of Charlotte</u>, 93 F.3d 1241, 1249 (4th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1246 (1997). As previously stated, a district court's denial of a Rule 59 motion is reviewed for abuse of discretion. <u>See Atlas Food Sys. & Servs.</u>, 99 F.3d at 594.

To assess whether Titan's due process rights were violated by this award of punitive damages, we weigh three factors: (1) the reprehensibility of the conduct, (2) the ratio between compensatory and punitive damages, and (3) the difference between the punitive damages award and the civil or criminal sanctions available for similar conduct. <u>See BMW</u>, 116 S. Ct. at 1598-99. Titan alleges that an application of these factors here indicates that the award of punitive damages was not appropriate. We disagree. First, we find that Shaw's discharge on the basis of his age, gender, and race, the grounds upon which the jury found liability, is reprehensible conduct. Second, the ratio of compensatory to punitive damages, approximately 1:5, is not unreasonable. Finally, the third factor's inquiry regarding the relationship between a potential criminal penalty and the punitive damages award is not applicable in the discriminatory discharge context because workplace non-discrimination remedies have traditionally

7

been a product of the civil justice system. Comparing available civil remedies, punitive damages are capped under the Virginia Human Rights Act at $350,000. Shaw's award was reduced after trial to comport with that statutory limitation. Therefore, the punitive damages award is in line with the available civil remedies. Thus, applying the factors set forth in BMW, we determine that this award of punitive damages did not impinge upon Titan's right to due process.

The Supreme Court has also instructed that "a district court sitting in diversity must apply state law standards to determine whether a verdict is excessive." Steinke v. Beach Bungee, Inc., 105 F.3d 192, 197 (4th Cir. 1997) (citing Gasperini v. Center for Humanities, 116 S. Ct. 2211, 2224-25 (1996)). Under Virginia law, which controls this case, the excessiveness of punitive damages turns on an examination of four factors: (1) "consideration of [the] reasonableness between the damages sustained and the amount of the award and the measurement of punishment required, [(2)] whether the award will amount to a double recovery, [(3)] the proportionality between compensatory and punitive damages, and [(4)] the ability of the defendant to pay." Poulston v. Rock, 467 S.E.2d 479, 484 (Va. 1996) (citations omitted). After a thorough review of the factors considered by district court when it determined that this punitive damages award was reasonable, we conclude that the district court did not abuse its discretion when it upheld the jury's award of punitive damages. See Steinke, 105 F.3d at 197 (holding "that a district court's decision on the question of remittitur should be reviewed under an abuse of discretion standard").

Finally, an award of punitive damages will only be set aside for insufficiency of the evidence when "no substantial evidence is presented to support it, it is against the clear weight of the evidence, it is based upon evidence that is false, or it will result in a miscarriage of justice." Barber v. Whirlpool Corp., 34 F.3d 1268, 1279 (4th Cir. 1994). Here, substantial evidence on the record adequately supports the award of punitive damages.

III.

Based upon the foregoing, we affirm the rulings of the district court in all respects.

AFFIRMED

8