**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MIKE STEINKE, as Personal
Representative of the Estate of
Zachary Steinke; MARY STEINKE, as
Personal Representative of the
Estate of Zachary Steinke; LINDA
NASH GIVENS, as Personal
Representative of the Estate of
Michael Nash,
<u>Intervenors-Appellants,</u>

and

BEACH BUNGEE, INCORPORATED,
<u>Plaintiff,</u>

No. 98-2081

v.

AGORA SYNDICATE, INCORPORATED;
BURNS & WILCOX, LIMITED,
<u>Intervenors-Appellees,</u>

and

NATIONAL ASSOCIATION OF TRAVELING
AMUSEMENTS; INSURANCE SERVICES
GROUP, INCORPORATED; SPORTS AND
ENTERTAINMENT INSURANCE SERVICES;
CHARLES MORTON; GRAY MORTON;
ST. PAUL INSURANCE COMPANY,
<u>Intervenors-Defendants.</u>

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Patrick Michael Duffy, District Judge.
(CA-95-1986-4-23)

Argued: March 5, 1999

Decided: May 17, 1999

Before HAMILTON and MOTZ, Circuit Judges, and
SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Susan Batten Lipscomb, NEXSEN, PRUET, JACOBS &
POLLARD, L.L.P., Columbia, South Carolina, for Appellants.
Michael Phillip Tone, WILSON, ELSER, MOSKOWITZ, EDEL-
MAN & DICKER, Chicago, Illinois; Donald L. Payton, KAUFMAN
& PAYTON, Farmington Hills, Michigan, for Appellees. **ON
BRIEF:** David E. Rothstein, NEXSEN, PRUET, JACOBS & POL-
LARD, L.L.P., Columbia, South Carolina, for Appellants. Kristi A.
Gleim, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER,
Chicago, Illinois, for Appellee Agora; Stephen R. Levine, KAUF-
MAN & PAYTON, Farmington Hills, Michigan; Tracy L. Eggleston,
COZEN & O'CONNOR, P.C., Columbia, South Carolina, for Appel-
lee Burns & Wilcox.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The estates of Zachary Steinke and Michael Nash ("Estates") inter-
vened in this declaratory judgment action brought by Beach Bungee,
Inc. ("Beach Bungee") against five defendants, including Agora Syn-
dicate, Incorporated ("Agora") and Burns & Wilcox, Limited ("Burns
& Wilcox"), the appellees before this court. Agora and Burns & Wil-

2

cox were also named as intervenor-defendants by the Estates. The Estates intervened as third-party beneficiaries and/or assignees of Beach Bungee, pursuant to a judgment the Estates obtained against Beach Bungee for which no defense was provided by the defendant insurance companies. Agora and Burns & Wilcox argue that Beach Bungee was not covered by any policy that they issued, and, even if Beach Bungee was covered, the terms of the policy in question preclude coverage. The district court granted summary judgment to Agora, Burns & Wilcox, and one other defendant, St. Paul Insurance Company ("St. Paul").[1] See Beach Bungee, Inc. v. Agora Syndicate, Inc., No. 4:95-1986-23 (D.S.C. filed June 11, 1998). We now affirm that decision.

I.

The pertinent facts for this appeal are largely undisputed. In 1992, Charles Vereen, president of Beach Bungee, contacted Sports & Entertainment Services ("Sports & Entertainment") in an effort to procure liability insurance as required by South Carolina state law, S.C. Code Ann. § 41-18-90. Sports & Entertainment was a retail insurance agency located in New Orleans and operated by Charles and Gray Morton ("the Mortons"), both licensed insurance agents. On December 22, 1992, Sports & Entertainment sent Vereen materials describing insurance programs for bungee jumping, but none of the materials referred to a specific insurance company. Instead, the material was simply a generic description of the types of policies available. Part of the material received by Vereen included a description of a "Tower Program" for bungee insurance and an application for insurance, neither of which referred to any specific insurance company or carrier. The cost of the policy was $1,000 for an inspection and a deposit of $10,000.

On February 5, 1993, Vereen completed the generic application for the "Tower Program" and sent it to Sports & Entertainment, along with a check for $1,000. Subsequently, Sports & Entertainment attempted to place Beach Bungee's application with an available insurance carrier, particularly St. Paul. On March 23, 1993, the Mor-

_____

[1] The grant of summary judgment as to St. Paul Insurance Company was not appealed.

3

tons faxed a note to Vereen that referenced the "St. Paul Bungee Tower Program," and requested Vereen to wire the premium deposit so that it could be submitted with the underwriting material. The note concluded with the statement "Call my office once the wire is sent so that we can release our check to St. Paul."

As a result of this note, Vereen asked for a sample policy from Sports & Entertainment. On March 26, 1993, the Mortons sent Vereen a copy of a St. Paul sample bungee liability policy, that was clearly stamped "SAMPLE" on every page. On March 29, 1993, Vereen wired $10,000 to Sports & Entertainment. At that time, Sports & Entertainment deposited the $11,000 from Beach Bungee into its operating and agency account. Not long after receiving the $10,000, the Mortons, and by extension, Sports & Entertainment, learned that St. Paul would no longer issue policies such as the "Tower Program." However, Beach Bungee's money was not returned and Vereen was not informed that the St. Paul policy, which he believed he had purchased, was unavailable.

Soon after learning this information, the Mortons formed the National Association of Traveling Amusements ("NATA"), an insurance purchasing program designed to provide liability insurance for operators of small amusement rides. On April 1, 1993, the Mortons contacted Burns & Wilcox, a wholesale insurance broker, in an effort to obtain insurance for NATA members. The application submitted to Burns & Wilcox for NATA requested insurance coverage for spectators only. On April 8, 1993, Burns & Wilcox submitted the NATA proposal to Agora, which provided a rate quote on April 9, 1993, to Burns & Wilcox. Agora offered to provide the requested coverage, a $1 million limit on spectators only, for a premium of five percent of the insureds' gross revenues. The Mortons accepted the quote and negotiated for coverage to become effective for NATA members on May 1, 1993.

The Mortons, operating as NATA, accepted applications to NATA and issued policy certificates to new NATA members. The policy certificates issued by NATA were generic insurance industry forms, and were not on forms provided by either Agora or Burns & Wilcox. At the end of each month, the Mortons provided a report to Burns & Wilcox and Agora identifying new members and providing a listing of

4

each members' gross revenues so that Agora could adjust the premium charges.

In early May, 1993, Beach Bungee requested a copy of the insurance policy that it had paid $11,000 to obtain. Although Beach Bungee apparently never received it, Gray Morton claims that he sent a fax on May 7, 1993, containing an explanation of the NATA "spectator only" policy and an application for membership in NATA. In any event, there is no evidence in the record that Beach Bungee ever completed a NATA application. Moreover, as the district court found, Beach Bungee was never listed on any of the NATA membership reports submitted by the Mortons to Burns & Wilcox and Agora.

On May 7, 1993, Beach Bungee did receive a fax containing a certificate of insurance prepared on a standard, generic insurance form by the Mortons describing the existence of a liability policy with aggregate limits of $2 million. The certificate did not indicate that it provided "spectator only" coverage. The company identified as providing coverage was the "Illinois Insurance Exchange," of which Agora Syndicate is a member. The certificate also did not contain a policy number. Vereen did not examine the certificate in detail because he assumed that the Mortons secured the type of insurance Beach Bungee required, as detailed in the "Tower Program" application that Vereen had earlier completed. Beach Bungee filed the certificate with the City of Atlantic Beach and received its operating license.[2]

The Mortons continued to accept applications from new NATA members and send generic certificates of insurance to them. Agora and Burns & Wilcox continued to receive the NATA reports at the end of each month. As stated previously, Beach Bungee never appeared on any of these reports. There was never any direct communication between Agora and the Mortons, nor did Agora or Burns & Wilcox provide the Mortons with forms on which to issue certificates

_____

[2] Although the record is unclear on this point, the Mortons claim that they later informed Beach Bungee that the insurance certificate was canceled because of Beach Bungee's failure to complete the NATA application. Drawing all inferences in favor of the Estates, the court assumes for purposes of this opinion that Beach Bungee was never informed that the issued certificate was canceled.

5

of insurance. It also is undisputed that Burns & Wilcox never communicated with Vereen or Beach Bungee, nor is there any evidence in the record that Burns & Wilcox ever received anything that they knew to come from Beach Bungee prior to the accident. Agora never communicated with Vereen or Beach Bungee, nor is there any evidence that Agora ever received anything attributable to Beach Bungee prior to the accident. It is also undisputed that neither Vereen, nor anyone else at Beach Bungee, had ever heard of either Agora or Burns & Wilcox. The evidence demonstrates, and the district court so found, that Vereen believed that he was purchasing insurance from St. Paul, and not Agora.

On August 10, 1993, Zachary Steinke and Michael Nash were killed in an accident at Beach Bungee's Atlantic Beach, South Carolina, bungee jumping attraction. Steinke was a Beach Bungee patron and Nash a Beach Bungee employee. The two were riding together in a device designed to lift them to a platform from which Steinke was supposed to bungee jump. The device malfunctioned, sending the two plummeting to the ground and to their deaths.

Agora and Burns & Wilcox first learned of the purported insurance coverage for Beach Bungee after the accident that killed Steinke and Nash, when Agora was contacted by a newspaper reporter covering the accident. Because Beach Bungee was not listed as a NATA member on the monthly reports provided to Agora and Burns & Wilcox, Agora refused coverage when Beach Bungee was sued by the Estates. The Steinke estate was awarded a $12 million judgment against Beach Bungee.[3] This insurance coverage action followed. After the Estates intervened in the original coverage action, three of the intervenor-defendants, Agora, Burns & Wilcox, and St. Paul, moved for summary judgment, which was entered by the district court on June 15, 1998.

_____

[3] After appeal and remand, see Steinke v. Beach Bungee, Inc., 105 F.3d 192, 198 (4th Cir. 1997) (remanding for reconsideration of remittitur in light of Gasperini v. Center for Humanities, Inc., 518 U.S. 415 (1996)), the district court remitted the Steinke estate's $12 million judgment to $6 million. See Steinke v. Player, Nos. 97-1625, 97-1730, 1998 WL 230828 (4th Cir. May 11, 1998) (affirming reduction of judgment). At the time summary judgment was awarded, the Nash estate claim was not yet reduced to a judgment.

II.

Because there were no direct contacts between Beach Bungee and Agora or Burns & Wilcox, the Estates argued to the district court that the Mortons and the entities controlled by them, Sports & Entertainment and NATA, were agents of Agora and Burns & Wilcox. As there was no actual agency agreement in existence, the Estates claimed that the relationship between Agora and Burns & Wilcox and the Mortons and their entities was either one of apparent agency or agency by estoppel.[4] The district court concluded that, under South Carolina law, no agency relationship existed and granted Agora and Burns & Wilcox summary judgment. The district court also found that the dispositive fact as to all of the Estates' claims against Agora and Burns & Wilcox was whether an agency relationship existed between the Mortons and Agora or the Mortons and Burns & Wilcox, respectively.[5]

Agency is a question of law to be decided on summary judgment

_____

[4] In their response to renewed motions for summary judgment by Agora and Burns & Wilcox, the Estates argued that Agora and Burns & Wilcox were liable for operating a joint venture with the Mortons. According to the district court, up until that point in the litigation, all of the Estates' pleadings, memoranda of law, and responses to interrogatories had advocated and sought liability based on agency theories of liability. To the extent it was a new theory of liability, the district court held that the claim was not cognizable. The district court also found that there was insufficient evidence in the record to create an issue of fact on the question of whether a joint venture or joint enterprise existed between the Mortons, Agora, and Burns & Wilcox. We agree with the district court.

[5] Because we agree that the agency question is dispositive of all claims against Agora and Burns & Wilcox, there is no need to address the Estates' argument that the district court erred in holding that the South Carolina Amusement Rides Safety Code, S.C. Code Ann.§ 41-18-10, did not require reformation of the "spectators only" policy provided by Agora for NATA members (which Beach Bungee undisputedly was not) to cover employees and patrons. If no agency relationship existed between Agora and the Mortons, it necessarily follows that Agora was not liable on the policy certificate issued by the Mortons to Beach Bungee.

when there is no fact giving rise to an inference of an agency relationship. Fernander v. Thigpen, 293 S.E.2d 424, 425 (S.C. 1982). The undisputed facts simply do not support any agency relationship as claimed by appellants. Neither Agora nor Burns & Wilcox provided the Mortons with forms, applications, letterheads, or policy documents to use with their NATA members. See Rickborn v. Liberty Life Ins. Co., 468 S.E.2d 292, 296 (S.C. 1996) (holding that apparent agency created if, by its words, conduct, or knowing inaction, the principal places the agent in a position such that a person of ordinary prudence, reasonably familiar with business customs, would be led to believe that the agent has authority to act for the principal); 3 Couch on Insurance § 44.47 (stating that possession of the forms, letterheads, applications, or policies of a particular insurer by an agent are indicative of agency relationship). Neither Agora nor Burns & Wilcox ever represented, either directly or indirectly, to Beach Bungee that the Mortons were acting as its agents. The Mortons, either themselves or through the standard insurance form certificates issued, also did not indicate the existence of any type of agency relationship with Agora or Burns & Wilcox. See Frasier v. Palmetto Homes of Florence, Inc., 473 S.E.2d 865, 867-68 (S.C. Ct. App. 1996) (holding that apparent agency created when a principal's words or conduct cause a third party to reasonably believe that the agent is acting on behalf of the principal). Moreover, because Beach Bungee believed it was buying a policy issued by St. Paul, and never even heard of Agora or Burns & Wilcox until after the accident, there was no detrimental reliance on the part of Beach Bungee. See Watkins v. Mobile Oil Corp., 352 S.E.2d 284, 287 (S.C. Ct. App. 1986) (holding that third party must reasonably rely on principal's conduct). Accordingly, in regard to both Agora and Burns & Wilcox, the district court correctly found that there was no apparent agency or agency by estoppel relationship between the two companies and the Mortons or the Morton-controlled entities.

With respect to the Estates' claims that Burns & Wilcox breached any type of fiduciary or professional duty to Beach Bungee, the district court found the lack of an agency relationship between Burns & Wilcox and the Mortons dispositive. Because there was no direct relationship between Burns & Wilcox and Beach Bungee, nor was there an indirect relationship via the Mortons acting as agents for Beach Bungee, the district court correctly concluded that"Burns & Wilcox

8

[did not] owe Beach Bungee a `duty' of any kind (fiduciary, professional, or otherwise)."

III.

On appeal, the Estates reiterate the arguments made to, and rejected by, the district court. After careful review of the record, briefs, and applicable law, and after having the benefit of oral argument, we affirm on the basis of the district court's well-reasoned opinion.

AFFIRMED

9